HANSON (FORREST v.). See Cases Nos. 4,942 and 4,943.

## Case No. 6,041.

### HANSON v. FOWLE et al.

[1 Sawy. 497.] [1]

District Court, D. Oregon. March 1, 1871.

IMPRISONMENT FOR DEBT IN ADMIRALTY SUITS—CLAIM FOR DAMAGES FOR INJURY TO PERSON NOT A CLAIM FOR DEBT—AT COMMON LAW.

1. The act of March 2, 1867 (14 Stat. 543), adopting the state law concerning "modifications, conditions and restrictions upon imprisonment for debt," does not apply to process in admiralty suits.

2. The act of August 23, 1842 (5 Stat. 517), gave the supreme court full authority to regu-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

late the process and forms of proceedings in suits of admiralty, and it will not be presumed that congress intended to change the rule prescribed by that court upon the subject of imprisonment on process in admiralty and adopt the state law, unless it is explicitly so provided.

3. An action to recover damages for an injury to the person with force, is not an action to recover a debt, and the claim for such damages is not a claim for a debt, within the meaning of that term as used in the act of 1867 (Adm. Rule 48, or subdivision 19 of article 1 of the state constitution)—at least until it is changed or merged in a judgment for a sum certain.

4. At common law, a capias lay. both before and after judgment in actions for injuries committed with force, but not otherwise, until the statute of Marlbridge (52 Hen. III. c. 23, and Westm. 2, 13 Edw. I. c. 11, etc.)

This suit was commenced January 30, 1871. The libel charges that in August, 1870, while on a voyage from Newport, Wales, to this port, in the American brig Madawasca, the defendant [A. F.] Turner being then second mate on said brig, in the presence and with the consent of the defendant [Frank] Fowle, who was then master of the same, did, without cause, beat the libellant [Christian Hanson], a seaman on said brig, with a capstan bar and otherwise, and thereby fractured his left arm, and otherwise injured said libellant, to his damage, $2,000. Upon reading and filing the libel, an order was made at chambers, allowing a warrant of arrest to issue against the defendants, in pursuance of the S. C. admiralty rules 2, 7, and 48. Upon this process the defendants were arrested. Fowle gave bail, but Turner was committed to jail for want thereof. Separate motions or exceptions were afterward made or taken by each defendant to vacate the order allowing the warrant, or to set aside the proceeding and process as irregular. On February 11, these motions were argued and submitted together.

Theodore Burmister, for libellant.
J. W. Whalley, for defendant Turner.
Orland Humason, for defendant Fowle.

DEADY, District Judge. Section 106 of the Code prohibits arrest in an action at law, except in certain cases therein specified. Subdivision 1 of said section authorizes an arrest of a defendant in an action for damages "for any injury to the person." Section 107 of the Code prescribes the mode or conditions of obtaining a writ of arrest in the cases specified in section 106. Code Or. 164, 165. Substantially these conditions are, that the facts authorizing the arrest shall appear by affidavit, and that the party asking the writ shall file an undertaking, with sureties, to the effect that they will pay defendant all damages which he may sustain by reason of the arrest.

Rules 2 and 7 of the S. C. admiralty rules, adopted at the term of December, 1844, authorize an arrest in all suits in personam; but rule 48, adopted at the term of December, 1850, "abolishes imprisonment for debt" on admiralty process in all cases where it is abolished upon similar or analogous process by the laws of the state where the court is held. It seems that this rule is not deemed to adopt the conditions and restrictions imposed upon the right to arrest a defendant by the state law. It simply adopts the law of the state prescribing the instances or cases in which an arrest is allowed, leaving the national courts to pursue their own mode of proceeding in the premises. 2 Conk. Adm. 135, 136. Upon this understanding of the law and the rules applicable to the subject, the order allowing the warrant of arrest in this suit was made, and the warrant issued without the libellant first filing the undertaking to the defendants.

It is now contended by counsel for the motion, that the act of March 2, 1867 (14 Stat. 543), entitled, "An act supplementary to the several acts of congress abolishing imprisonment for debt," applies to process in admiralty proceeding, and that therefore this warrant was improperly issued, because the libellant had not first performed the conditions imposed by section 107 of the Code upon plaintiff's right to have a defendant arrested in a similar case. If the premises are correct, the conclusion follows.

The act of 1867 provides: "That whenever, upon mesne process or execution issuing out of any of the courts of the United States, any defendant therein is arrested or imprisoned, he shall be entitled to discharge from such arrest or imprisonment in the same manner as if he was so arrested or imprisoned on like process of the state courts in the same district. And the same oath may be taken, and the same length of notice thereof shall be required, as is provided by such state laws; and all modifications, conditions, and restrictions upon imprisonment for debt, now existing by the laws of any state, shall be applicable to process issuing out of the courts of the United States therein, and the same course of proceedings shall be adopted as now are or may be in the courts of such states. But all such proceedings shall be had before some one of the commissioners appointed by the United States circuit court to take bail and affidavits."

The acts to which this purports to be supplementary are those of February 28, 1839, and January 4, 1841 (5 Stat. 321, 410); and taken together, they, in effect, abolish imprisonment for debt on process issuing out of any court of the United States, in all cases whatever where, by the laws of the state in which the said court shall be held, imprisonment for debt has been or shall hereafter be abolished: and also provided, that where, at the date of the first named act, imprisonment for debt was allowed upon conditions and restrictions, it should be allowed in like manner in the United States courts.

The provision in regard to conditions and

restrictions upon the allowance of an arrest not being prospective, do not adopt the laws of any state on that branch of the subject, passed since February 28, 1839. It was also held, that these acts did not apply to debtors of the United States (U. S. v. Hewes [Case No. 15,359]); nor to process in personam issuing out of the admiralty courts (Gardner v. Isaacson [Id. 5,230]; Gaines v. Travis [Id. 5,180]).

Taken literally and construed without reference to any consideration beyond that appearing upon the face of the statute, there is no reason to suppose that congress did not intend the acts of 1839 and 1841 to apply to process in suits in admiralty, and with equal reason, the same may be said of the act of 1867. Yet Mr. Justice Betts, in 1848 and 1849, in the cases above cited (Gardner v. Isaacson and Gaines v. Travis), deliberately held the contrary, and I am satisfied to follow his conclusion, until congress shall otherwise explicitly provide.

From the foundation of this government, in all legislation concerning the process and proceedings in the national courts, congress has never confounded the three different and distinct branches or heads of jurisdiction, known as "Common Law," "Equity" and "Admiralty." The process acts of 1789, 1792, 1793 (1 Stat. 93, 275, 335), and 1828 (4 Stat. 278), all uniformly provide that the forms of writs, execution and other process, and the forms and modes of proceeding in suits of admiralty jurisdiction shall be according to the rules and usages which belong to courts of admiralty as contradistinguished from those of common law. These acts, except the first one (which was only temporary), also provide that these forms and modes of proceeding are subject to such alterations and additions as the courts of admiralty might deem expedient, "or to such regulations as the supreme court of the United States shall think proper from time to time by rule, to prescribe to any circuit or district court concerning the same."

By the act of August 23, 1842 (5 Stat. 517), the supreme court was empowered to regulate the whole subject of process and proceeding in courts of admiralty. This was an extension, probably, of the power already conferred upon that court by the above cited acts of 1792, 1793 and 1828. In pursuance of this authority the supreme court made rules 2, 7 and 48, regulating imprisonment on admiralty process, under which the arrest in this case was made.

Under this state of statutes, rules and decisions, all of which, it must be presumed, were well known to congress at that time, I do not think it reasonable to conclude that it was the intention of the act of 1867 to modify the act of 1842—change the rules of the supreme court, and so far, withdraw the subject from its authority. If so, it seems to me, that process in admiralty would have been explicitly mentioned; particularly when it was so well known that similar language in the former statutes on the subject of imprisonment for debt had been construed by the courts not to include courts of admiralty. On the other hand, substantial reasons can be assigned for the passage of the act of 1867, without including that of the regulation of imprisonment upon admiralty process.

The first half of the act has no application to the question before the court in any view of the subject. It only regulates—by adopting the law of the state upon the subject—the discharge of persons already imprisoned for any cause, on process issuing out of the national courts. For instance, by the law of this state a person imprisoned on execution —after judgment—ten days, may be finally discharged from such imprisonment if he makes it appear that he has no property liable to execution. Code Or. 759. The effect of this provision, at least, is to enable a person imprisoned on execution in a common law action in this court, to obtain a final discharge therefrom, upon the same terms and conditions that he could in a similar action in a state court; and this was not so held or understood before. Catherwood v. Gapete [Case No. 2,513]; In re Freeman [Id. 5,083]; and cases there cited. The latter clause of the act obviates or provides for a difficulty which had frequently arisen in the administration of the state laws regulating "executions and other final process" adopted by section 3 of the process act of 1828 (see In re Freeman, cited above), by providing that the proceedings to obtain a discharge shall be had before a commissioner of the circuit court, rather than the state officer as provided by the state law.

The middle clause which adopts the state law concerning "modifications, conditions and restrictions upon imprisonment for debt," was called for or suggested, at least as to the "conditions and restrictions," by the well known fact, that the acts of 1839 and 1841, to which it is supposed this is supplementary, had in this respect been construed to be not prospective. Since the date of the first of these acts, serious changes have been made on the subject in the states then in the Union, while as to the states since admitted, they did not apply at all. If the phrase "modifications upon imprisonment" is construed to be something more than cumulative upon the terms "conditions and restrictions" immediately following, and to have a distinct and independent operation in regard to the subject—"imprisonment for debt"—then it was probably inserted in the act to meet and obviate the construction given to the acts of 1839 and 1841, in Catherwood v. Gapete and in Re Freeman, supra, where it was held that these acts did not adopt a law of the state which, instead of abolishing imprisonment for debt, only modified it and allowed it in certain cases.

In addition to these considerations in support of the conclusion that the act of 1867

was not intended to apply to process in admiralty, weight should be given to the manifest impropriety of subjecting imprisonment on such a process to all the variant and varying conditions and restrictions which may be imposed from time to time upon imprisonment for debt in common law actions, which mainly arise between citizens of the same state, by the legislatures of the several states. By the constitution, admiralty courts cannot exist in the states. Their laws imposing conditions and restrictions upon imprisonment for debt are not framed with a view to the exigencies of the class of persons who constitute the suitors in such courts, or the nature of the controversies over which they have jurisdiction. If a sailor arriving in a strange port must in all cases give security in the amount claimed, before he could arrest an officer of the ship in a suit for a wanton and serious injury to the person, it would generally operate as a denial of justice to this class of persons. Under such circumstances the defendant, "if sued without arrest, would find a substantial defense in a fair wind and open sea." Ben. Adm. 232.

True, if no restrictions are imposed upon the right to arrest a defendant, serious injury may be done to an innocent party by an irresponsible or transient libellant. But a court of admiralty is best calculated to judge, under what circumstances and to what extent to impose restrictions upon the issuance of a warrant of arrest. Probably, as a rule, security should be first given for any damage which the defendant may sustain if the arrest should prove wrongful; but when it appears that the libellant is unable to give such or any security, and prays an arrest of the defendant for some prescribed cause of arrest, the warrant might issue subject to the right of the defendant to give bail, or demand and have an immediate inquiry before a commissioner, to ascertain whether or not there is probable cause of suit and arrest. If upon the examination of the case the commissioner should conclude that there was probable cause, he should endorse that fact upon the warrant, which should thereafter be deemed equivalent to security, or otherwise he should order the defendant discharged.

Again admiralty jurisdiction is given by the constitution exclusively to the United States, and the supreme court is the ultimate judge of the limits of this jurisdiction. Courts of admiralty are in some sense international and inter-state courts, and for these reasons as well as others, the regulation of their process and proceedings seems so appropriately to belong to the supreme court, and is so foreign to the genius and spirit of the local laws of the states, that it is not to be inferred without very good reason, if not explicit declaration, that congress after confiding this authority to that tribunal by the act of 1842, intended to take it away by the act of 1867 in the mere matter of "modifica-

tions, conditions and restrictions upon imprisonment for debt," and give it to the states, in proceedings which for the most part arise not between citizens of the state, but between non-residents, strangers and aliens. The St. Lawrence, 1 Black. [66 U. S.] 52S.

Nor is it admitted that this warrant of arrest issued without the facts necessary to authorize an arrest first appearing by affidavit as required by section 107 of the Oregon Code. The libel being verified and the cause of suit and arrest being identical, the facts authorizing the issuance of the warrant did appear from the written oath of the libellant—his affidavit. In U. S. v. Walsh [Case No. 16,635], this court held that when the cause of arrest was sufficiently set forth in the complaint, a separate affidavit as to these facts is not necessary to authorize an arrest.

Counsel for defendant Turner seeks to distinguish this case from that, because in the re-enactment of section 107 in 1865, so as to allow the writ to be issued by the clerk without a judge's order, the wording of the section was so changed in this respect, that instead of simply requiring the facts to appear by affidavit when the writ is allowed, without reference to the time of its filing as before, it read that the affidavit for the arrest should be "filed after the commencement of the action," and therefore after the filing of the complaint, and therefore it must be something different and in addition to the complaint. This is an extremely fine point, and rests wholly upon the letter of the statute, without giving any consideration to the reason or purpose of it. A provisional arrest is not allowed before the commencement of an action nor after judgment therein. These are the limits within which the proceedings, including the filing of the affidavit, for a provisional arrest must be taken; and for all practical purposes an affidavit filed with the complaint—at the same time—and upon which the writ is afterward allowed is within the statute. No importance is given by the section to its being filed any perceptible time after the complaint. The time between the commencement of the action and the judgment is given for the convenience of the plaintiff, and to enable him to procure the arrest at any time before judgment, if cause should arise in the progress of the action. So far, the purpose is to prohibit or prevent the allowance of the writ before the commencement of the action, and nothing more. This being so, a verified complaint may very properly be considered both a complaint and an affidavit, and if the facts contained in it justify an arrest, it is sufficient for that purpose.

Counsel for defendants also argued that an arrest for an injury to the person was not allowed by the law of this state, and therefore this arrest was not even within the authority of admiralty rule 48. Of course, counsel admits that subdivision 1 of section 106-

above cited, provides for an arrest of the defendant in an action for damages for an injury to the person, but he contends that this provision of the section is in conflict with subdivision 19 of article 1 of the constitution of the state, which declares: "There shall be no imprisonment for debt, except in cases of fraud and absconding creditors." In U. S. v. Walsh, supra, it was held that this clause of the constitution should be construed as if it read: "There shall be no imprisonment for debt, arising upon contract express or implied, except," etc. In support of this conclusion, the court said: "General or abstract declarations in bills of rights are necessarily brief and comprehensive in their terms. When applied to the details of the varied affairs of life, they must be construed with reference to the causes which produce them, and the end sought to be obtained. A person, who wilfully injures another in person, property or character, is liable therefor in damages. In some sense he may be called the debtor of the party injured, and the sum due for the injury, a debt; but he is in fact a wrong-doer, a trespasser, and does not come within the reason of the rule which exempts an honest man from imprisonment, because he is pecuniarily unable to pay what he has promised. For instance, a person who wrongfully beats his neighbor, kills his ox or girdles his fruit trees, ought not to be considered in the same category as an unfortunate debtor."

And this accords with the course of the common law, which did not give process against the body either before or after judgment only in actions for wrongs accomplished with force; it being a rule that in actions vi et armis a capias lay, and when a capias lay in process a capias ad satisfaciendum lay after judgment. Afterwards a capias was given in actions of account by the statute of Marlbridge (52 Hen. III. c. 23, and Westminster 2, 12 Edw. I. c. 11); in debt and detinue by statute 25 Edw. III. c. 17; in case by statute 19 Hen. VII. c. 9; and in annuity and covenant by the statute of 23 Hen. VIII. c. 14, 3 Bl. Comm. 281; 1 Attys'. Prac. K. B. 280.

To conclude, the motion must be denied, because: I. That portion of the act of 1867 which adopts the state law concerning the "modifications, conditions and restrictions upon imprisonment for debt," does not apply to process in suits in admiralty. II. The suit of the libellant is not to recover a debt within the meaning of that term as used in the admiralty rule 48 of the act of 1867, or the constitution of the state, at least until it shall ripen into a decree for a sum of money certain, but to recover damages for an injury to the person with force, for which the defendant might be arrested under admiralty rules 2 and 7, whether the state law allowed an arrest in such cases or not.

[Upon hearing the proofs the court gave judgment for the libellant in Case No. 6,042.]